UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ANTHONY HEGEDUS, JUSTIN WELCH, JONATHAN OGNIAN, and BRYANT LOWE,**
on behalf of themselves and all other persons similarly situated, known and unknown,

         Plaintiffs,

vs.

**NEXEN CORPORATION,** a Michigan for-profit corporation, **STEVEN KIRKA,** a natural person, **AMAZON.COM DEDC LLC**, a Michigan for-profit corporation, **and AMAZON.COM, INC.,** a Delaware for-profit corporation,

         Defendants.

Case No:
Hon.
Magistrate Judge

_____/

Bryan Yaldou (P70600)
Leah Seliger (P79284)
Omar Badr (P70966)
THE LAW OFFICES OF
BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
Phone: (734) 692-9200
Fax: (734) 692-9201
bryan@yaldoulaw.com
*Attorneys for Plaintiffs*

_____/

## **PLAINTIFFS' COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs Anthony Hegedus ("Plaintiff Hegedus"), Jonathan Ognian ("Plaintiff Ognian"), Justin Welch ("Plaintiff Welch"), Bryant Lowe ("Plaintiff Lowe") and Stacy Hunger ("Plaintiff Hunger"), by and through their attorneys, THE LAW OFFICES OF BRYAN YALDOU, PLLC, and for their Complaint against Nexen Corporation ("Defendant Nexen"); Steven Kirka ("Defendant Kirka"); and Amazon.com DEDC LLC and Amazon.com, Inc. (collectively, "Defendant Amazon"), hereby allege the following:

## INTRODUCTORY STATEMENT

1.     This is a civil action seeking relief under the provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* Plaintiffs are former employees of joint employers Defendant Nexen, Defendant Kirka, and Defendant Amazon, whose rights under this statute have been violated. Plaintiffs now seek to recover the benefits due to them from Defendants under the FLSA as a result of Defendants' failure to pay minimum wages and the overtime wage premium to Plaintiffs and other similarly situated employees.

2.     Plaintiffs seek a declaration that their rights under the FLSA have been violated; an award of the unpaid regular and overtime wages owed to them; an award of liquidated damages in an amount equal to the unpaid wages owed to them; and an award of reasonable attorneys' fees and costs as provided for in the FLSA, in order to compensate them for damages suffered and to ensure that they and future

employees will not suffer as a result of such illegal conduct on the part of Defendants in the future.

## JURISDICTION AND VENUE

3.    Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

4.    This Court has federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. §216(b) and 28 U.S.C. § 1331.

5.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a) and 1391(b), because Plaintiffs worked for Defendants in this District and suffered the damages at issue in this District, Defendants have significant business contacts within this District, and because the actions and events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

6.    Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

7.    Plaintiffs Hegedus, Ognian, Welch, Lowe, and Hunger are adult citizens of the State of Michigan, who reside in this judicial district. They worked as drivers, loaders and delivery staff ("Delivery Personnel") for for-profit businesses Defendant Amazon and Defendant Nexen. Plaintiffs reside in this judicial district.

8.     Defendant Nexen is a for-profit Michigan company with its Registered Office Address at 9338 Harrison, Romulus, MI 48174.

9.     Defendant Amazon.com Inc. is a Delaware Limited Liability Company and is one of the largest internet retailers in the world.

10.    Defendant Amazon.com DEDC LLC is a Washington company and is a sister company of Amazon.

11.    Upon information and belief, Defendant Kirka is an owner and officer of Defendant Nexen and an adult citizen of the State of Michigan who resides in this judicial district.

## NATURE OF THE SUIT

12.    Defendant Amazon, incorporated on May 28, 1996, offers a range of products and services through its websites. The company's products include merchandise and content that it purchases for resale from vendors and those offered by third-party sellers. Defendant Amazon is renowned for its extremely fast delivery of products ordered through its website, www.amazon.com.

13.    In order to provide fast delivery to customers throughout the United States, Amazon has engaged subcontracting companies to hire Delivery Personnel to pick up packages from Amazon's various warehouses throughout the country and deliver those packages to local post offices and Amazon's retail customers.

4

14.    Plaintiffs worked for a subcontracting company in this structure to provide delivery services to Defendant Amazon and its customers. Upon information and belief, Defendant Nexen is a subcontractor of Defendant Amazon that hires Delivery Personnel on behalf of Amazon to deliver packages to Amazon's retail customers and to local post offices.

15.    Although Defendant Nexen misclassified Plaintiffs as independent contractors, they were in fact Defendant Nexen and Defendant Amazon's employees under the FLSA. Under the FLSA, it is the economic reality of the relationship — not the title given by the Defendants — that controls whether a worker meets the definition of an "employee" under the FLSA. *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. Mich. 1984) (citing *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977)). In applying this economic reality test, the Sixth Circuit has identified six factors to consider: 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; 5) the degree of the alleged employer's right to control the manner in which the work is performed; and 6) whether the service rendered is an integral part of the alleged employer's business. *Id.*  Moreover, the FLSA defines "employ" as including "to suffer or permit to work" and "employee" as "any individual employed by an employer." 29 U. S. C. §§ 203(g), (e).

16.    This is one of the broadest definitions that has ever been included in any legislation in the United States of America's history. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947); *United States v. Rosenwasser*, 323 U.S. 360, 362-363 and n. 3 (1945) (quoting then-Senator Hugo Black as stating that the term "employee" had been given "the broadest definition that has ever been included in any one act," 81 Cong. Rec. 7657 (1935)). The Defendants are Plaintiffs' employers under the broad definition set by the FLSA because under the economic realities test.

17.    One of the most significant issues in this case is the status of Defendant Amazon as a joint employer. Defendant Amazon uses a corporate structure which is commonly referred to as the "fissured workplace." Plaintiffs' complaint is a part of a movement challenging the fissured workplace scheme that often causes American workers to be denied their rights under the FLSA. (Exhibit A). In recent years, the employment relationship between workers and businesses receiving the benefit of their labor has fissured apart as companies have contracted out or otherwise shed activities to be performed by other businesses. *Id*. The blurred lines from the fissured workplace make achieving compliance with the wage and hour laws a difficult task. *Id.* Intense competition between subcontracting companies leads to low pay and noncompliance pulls down standards for all. These falling standards make it difficult for responsible employers to survive in low margin, fiercely competitive

conditions. *Id.* The costs in this race to be the lowest bidder are ultimately borne by workers deprived of their wages and their rights. *Id.*

18.     In 2015, the U.S. Department of Labor (DOL) brought a case alleging that DirectTV, a satellite television provider, was in violation of the FLSA by using the fissured workplace scheme and misclassifying employees as independent contractors. *Perez v. Lantern Light Corp.*, 2015 WL 3451268, at \*17 (W.D. Wash. May 29, 2015) (Exhibit B). The Court found that the satellite television provider was a joint employer of the installers employed by the company with whom the provider contracted to install its services. *Id.*

19.     The question of whether two or more entities can be joint employers is not a new issue. While the FLSA does not expressly reference "joint employment," the Department of Labor's first set of regulations implementing the statute – which remains in force – recognizes that, "[a] single individual may stand in the relation of an employee to *two or more employers at the same time under the Fair Labor Standards Act or 1938*, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer . . . [I]f the facts establish that the employee is employed *jointly by two or more employers*, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment

for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." 29 C.F.R. § 791.2(a) (emphasis added).

20.     The Supreme Court has long recognized that two or more entities may constitute joint employers for purposes of the FLSA. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724-25 (1947); *Falk v. Brennan*, 414 U.S. 190 (1973).

21.     Additionally, courts within the Sixth Circuit have also recognized joint employment doctrine in the FLSA context. *Parrott v. Marriott Int'l, Inc.*, 2017 U.S. Dist. Lexis 144277, 2017 WL 3891805 (E.D. Mich. 2017) (Exhibit C); *Dowd. DirectTV, LLC,* 2016 U.S. Dist. Lexis 36, 2016 WL 28866 (E.D. Mich. 2016) (Exhibit D); *Bacon v. Subway Sandwiches & Salads LLC*, 2015 U.S. Dist. Lexis 19572, 2015 WL 729632 (E.D. Tenn, 2015) (Exhibit E).

22.     Plaintiffs joined herein similarly intend to prove in this litigation that they were jointly employed by Defendants, were entitled to the overtime and minimum wage protections of the FLSA, and are owed damages for Defendants' willful violations of the FLSA.

## STATEMENT OF MATERIAL FACTS

23.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

24.     Upon information and belief, Defendant Nexen is owned and operated by Defendant Steve Kirka.

25.     Defendant Nexen is a subcontracting company that, upon information and belief, contracted with Defendant Amazon to provide local truck driving and delivery services to Defendant Amazon's retail customers and to local post offices.

26.     Defendant Amazon both hired direct employees and used subcontractors, like Plaintiffs. Plaintiffs and other similarly situated Delivery Personnel performed the same responsibilities as Amazon's employees, but Amazon's direct employees did not leave the warehouse to deliver packages. All of the workers, including Defendant Amazon's direct employees and subcontracted workers, were under the control of Defendant Amazon.

27.     Amazon Flex drivers were independent contractors who worked for Defendant Amazon to meet deadlines when Defendant Amazon's Delivery Personnel were unable to meet the delivery needs of Defendant Amazon's customers.

28.     Plaintiffs worked for both Defendant Nexen and Defendant Amazon. Plaintiffs filled out Defendant Amazon's online application for employment,

9

submitted to Amazon's mandated background check and driving record check, and were asked to watch an Amazon training video online prior to beginning work. These preconditions controlled Plaintiffs' eligibility to work for Defendant Nexen to such a degree that Defendant Amazon had constructive authority to hire Plaintiffs.

29.     Although Defendant Nexen handled the initial recruiting of Plaintiffs, in reality, Defendant Amazon directed and controlled Plaintiffs and all similarly situated Delivery Personnel. Defendant Amazon determined Plaintiffs' employment through its logistics website, created routes for Plaintiffs, and established the performance standards for the work of Plaintiffs and similarly situated Delivery Personnel. Defendant Amazon set strict standards for all workers and used its subcontractors, like Defendant Nexen, to enforce those standards.

30.     Once Plaintiffs passed Defendant Amazon's background and driving checks, they were issued Amazon I.D. badges. These badges were used to enter the Amazon warehouse. Although these I.D. badges were required, some Plaintiffs and other similarly situated Delivery Personnel never received their own Amazon badges. Instead, Amazon warehouse personnel would let Plaintiffs into the warehouse to perform the necessary work despite not having Amazon I.D.s. For example, Amazon employees and managers, including Amazon Manager Michael Donnelly, gave their approval to Plaintiffs and other similarly situated Delivery

Personnel to work within the Amazon warehouse without an Amazon badge or login information.

31.    In addition to wearing an Amazon I.D. badge, all Delivery Personnel were required by Defendant Amazon to wear at least one other item with the Amazon insignia while working.

32.    In general, there were two types of Delivery Personnel employed by Defendant Nexen to serve Defendant Amazon's delivery needs. Certain Delivery Personnel loaded trucks with Amazon packages that were ultimately delivered to Defendant Amazon's retail customers; others loaded trucks with Amazon packages that were then delivered to local post offices.

33.    Plaintiffs and similarly situated Delivery Personnel who delivered Amazon packages to individual homes and businesses generally arrived at one of Defendant Amazon's warehouses in the morning. Those Delivery Personnel who delivered to local post offices would generally arrive at the Amazon office and often were required to wait for hours before being assigned a route.

34.    Delivery Personnel were required to use Defendant Amazon's technology in their positions. There were two pieces of technology that were commonly used. The first was called the "Amazon Rabbit." The Amazon Rabbit was a hand-held device used to scan the packages. The scans would give the Delivery Personnel information they needed to deliver the packages. The second was called

"Amazon Flex." Amazon Flex was an application that could be downloaded on Personnel Drivers' personal smart phones that gave them the same information as the Amazon Rabbit.

35.    Once Plaintiffs scanned the packages, Plaintiffs loaded the Amazon packages onto a truck issued by Defendant Nexen and delivered the packages to Amazon's retail customers.

36.    The length of Plaintiffs' shifts would vary based on the length of the route, the number of packages, and the accuracy of the delivery information.

37.    The Amazon technology allowed Defendant Amazon to track each employee's progress on his/her delivery route, their exact location, which packages have been delivered, and the exact location of the package when delivered.

38.    The routes generated by either the Amazon Rabbit or Amazon Flex application estimated the total time Delivery Personnel should take to complete a given route. Those estimations were the basis for Defendant Nexen prohibiting Plaintiffs from taking lunch breaks and for the need to send "rescue" drivers to assist with deliveries. Rescue drivers were either Plaintiffs, other similarly situated Delivery Personnel, or Amazon Flex drivers.

39.    Plaintiffs and similarly situated Delivery Personnel did not have any say in whether they accepted or declined the route assigned. The routes assigned by Defendant Nexen were mandatory assignments.

40.     As a result of Defendant Amazon's commitment to extremely prompt delivery, Plaintiffs and all similarly situated Delivery Personnel were encouraged to perform their delivery routes as fast as possible with as few breaks as possible. Plaintiffs often did not take lunch or breaks during their shifts (although some had lunch breaks automatically deducted from their pay regardless of whether they actually took lunch breaks).

41.     Plaintiffs and similarly situated Delivery Personnel often worked long shifts and overnight shifts in order to meet Defendant Amazon's guaranteed delivery deadlines.

42.     When Plaintiffs and similarly situated Delivery Personnel couldn't find a delivery location or needed to contact an Amazon retail customer, they were instructed to call Amazon support if Defendant Nexen could not resolve the issue. Similarly, if there were issues with shipping labels, Plaintiffs would send an image of the shipping label to Defendant Nexen who would then send it to Defendant Amazon for resolution of the issue.

43.     Defendant Kirka, a corporate officer of Defendant Nexen, through his agents, would often call the Plaintiffs and other Delivery Personnel in the field to monitor their performance. If the Plaintiffs were not moving at a pace that Defendant Nexen and Defendant Kirka thought was satisfactory, they would be reprimanded by the Defendants. Plaintiffs would be penalized for a performance issue by

Defendant Kirka and other managers of Defendant Nexen if they were not keeping pace with their route assigned by Defendant Amazon.

44.     At the end of each delivery route, Plaintiffs and similarly situated Delivery Personnel were required to check in with one of Defendant Amazon's employees in an Amazon warehouse to disclose which, if any, packages could not be delivered.

45.     Defendant Nexen made various promises to Plaintiffs regarding compensation ranging from $13.00 per hour to $120.00 per day. None of these promises were ever kept.

46.     Plaintiffs and similarly situated Delivery Personnel were all shorted hours on their checks and were never paid overtime when they worked over 40 hours in a workweek.

47.     Defendant Nexen, through its human resources manager, told Plaintiffs and similarly situated Delivery Personnel that they do not pay overtime.

48.     Plaintiffs received paychecks when they worked for Defendants, but not consistently, and they were never paid for all of their time worked. Defendant Nexen and Defendant Kirka offered varying explanations for why payments did not cover all hours worked. Plaintiffs were **never** compensated at the overtime rate of one and one-half their regular rate of pay for hours worked over 40 hours in a workweek.

49.    Additionally, improper deductions were taken from Plaintiffs' and Delivery Personnel's paychecks on a regular basis, including deductions for lunch breaks and deductions for company property issued to Plaintiffs for work.

50.    Plaintiffs brought the issue of improper payment, including instances in which no payment was given at all, to the attention of the managers of Defendant Nexen and Defendant Amazon on numerous occasions. In fact, employees of Defendant Nexen often enlisted the protection of police officers in order to approach Defendant Kirka and demand their earned but unpaid paychecks. Defendant Nexen would consistently fail to remedy the situation, making excuses, blaming different managers for the mistakes, and generally giving Plaintiffs "the run-around." Plaintiff also occasionally appealed to Defendant Amazon's managers to address the numerous payroll issues that arose. One such manager, Mike Donnelly, told Plaintiff Lowe he would handle the situation, but to no avail.

51.    Plaintiffs and many similarly situated Delivery Personnel ultimately stopped working for Defendants because they were not paid for all of the time that they worked for Defendants. Plaintiffs and other Delivery Personnel that did not leave voluntarily were generally fired in retaliation for complaining about problems with their compensation.

## **COLLECTIVE ACTION ALLEGATIONS**

52.    Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

53.    Plaintiffs bring the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

54.    Plaintiffs assert these claims on behalf of themselves and on behalf of all similarly situated current and former employees of Defendant Nexen, who worked in Michigan providing loading, driving, and delivery services for Defendant Amazon, and who were not paid either the minimum wage for all hours worked or the rate of one and one-half their regular rate of pay for hours worked in excess of 40 hours a week during the relevant time period as required by the FLSA.

55.    Plaintiffs seek to notify the following employees of their right under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join the action:

> All individuals who worked at any time during the past three years for Defendant Nexen and Defendant Amazon as Delivery Personnel, who were not paid the minimum wage for all hours worked or did not receive the overtime wage premium of one and one-half times their regular rate of pay for hours worked in excess of 40 hours in a workweek.

56.    The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of that Act. 29 U.S.C. § 255. As alleged above, Plaintiffs and similarly situated current and former employees' claims arise

out of Defendants' willful violations of the FLSA. Accordingly, the Court should require appropriate notice of this action be given to all similarly situated current and former employees of Defendant Nexen within three years before the filing of this Complaint.

57.    Upon information and belief, Defendant Nexen has employed numerous similarly situated employees during the time period relevant to this action.

58.    The identities of these employees, as a group, are known only to Defendant Nexen. Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practicable.

59.    Plaintiffs ask this Court to require Defendants to furnish Plaintiffs with the contact information of other similarly situated Personnel Drivers pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

60.    Collective adjudication is appropriate in this case because the employees who Plaintiffs wish to notify of this action have been employed in the same position as Plaintiffs; have performed work similar to Plaintiffs; have been subject to the same policies and procedures as Plaintiffs; and have been subject to compensation practices similar to those which form the basis of Plaintiffs' case, including unlawful failure to pay the minimum wage and overtime premiums under the FLSA.

## COUNT I

## Defendant Nexen - Violation of the Minimum Wage Provision of the FLSA

61.    Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

62.    Plaintiffs were "employees" of Defendant Nexen, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Nexen "suffered or permitted" Plaintiffs to work for it.

63.    Defendant Nexen was Plaintiffs' "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Nexen "suffered or permitted" Plaintiffs to work for it.

64.    Defendant Nexen is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

65.    Defendant Nexen is required to comply with the requirements of the FLSA.

66.    The minimum wage provision of FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the minimum wage for all time worked.

67.    Plaintiffs were covered employees entitled to the protections of the FLSA and are not exempt from the minimum wage provision of the FLSA.

18

68.    Defendant Nexen has failed to pay Plaintiffs in compliance with the FLSA because they were not paid at least the minimum wage for all hours worked in accordance with 29 U.S.C. § 206.

69.    In addition to compensatory damages for their unpaid wages, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Nexen for its willful failure to pay at least the minimum wage for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Nexen and in favor of Plaintiffs, declare that Defendant Nexen willfully violated the minimum wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## **COUNT II**

## **Defendant Nexen - Violation of the Overtime Wage Provision of the FLSA**

70.    Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

71.     Plaintiffs were "employees" of Defendant Nexen, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Nexen "suffered or permitted" Plaintiffs to work for it.

72.     Defendant Nexen was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Nexen "suffered or permitted" Plaintiffs to work for it.

73.     Defendant Nexen is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

74.     Defendant Nexen is required to comply with the requirements of the FLSA.

75.     The overtime wage provision of FLSA, 29 U.S.C. § 207, requires employers to pay an overtime premium of one and one-half times an employee's regular rate for every hour worked over 40 hours in a workweek.

76.     Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the overtime wage provision of the FLSA.

77.     Defendant Nexen did not pay Plaintiffs one and one-half of their regular rate of pay for hours worked over 40 hours in a workweek.

78.     Defendant Nexen willfully failed to pay Plaintiffs the required overtime wage premium when Plaintiffs worked more than 40 hours in a workweek, in violation of the FLSA.

79.     In addition to compensatory damages for the required overtime wage premium, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Nexen for their willful failure to pay at least the overtime wage premium for all overtime hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Nexen and in favor of Plaintiffs, declare that Defendant Nexen willfully violated the overtime wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT III

## Defendant Steve Kirka - Violation of the Minimum Wage Provision of the FLSA

80.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

81.     Defendant   Kirka   was   an   employer   of   Plaintiffs   under 29 U.S.C. § 203(e) because he "suffered or permitted" Plaintiffs to work for him.

82.     Defendant Kirka, upon information and belief to be true, has ownership interest in the enterprise Nexen Corporation, which employed Plaintiffs.

83.     Defendant Kirka has operational control of Defendant Nexen. As such, Defendant Kirka oversees the pay policies and signs off on all of the payroll for Defendant Nexen.

84.     As an employer of Plaintiffs and putative class members, Defendant Kirka is required to comply with the requirements of the FLSA.

85.     Defendant Kirka willfully failed to comply with the minimum wage provision of the FLSA.

86.     Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Kirka is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Kirka and in favor of Plaintiffs, declare that Defendant Kirka willfully violated the minimum wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT IV

## Defendant Steve Kirka- Violation of the Overtime Wage Provision of the FLSA

87.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

88.     Defendant Kirka was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

89.     Defendant Kirka, upon information and belief to be true, has ownership interest in the enterprise Nexen Corporation, which employed Plaintiffs.

90.     Defendant Kirka has operational control of Defendant Nexen. As such, Defendant Kirka oversees the pay policies and signs off on all of the payroll for Defendant Nexen.

91.     As an employer of Plaintiffs and putative class members, Defendant Kirka is required to comply with the requirements of the FLSA.

92.     Defendant Kirka willfully failed to comply with the overtime wage provision of the FLSA.

93.     Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Kirka is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Kirka and in favor of Plaintiffs, declare that Defendant Kirka willfully violated the overtime wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT V

## Defendant Amazon - Violation of the Minimum Wage Provision of the FLSA

94.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

95.     Defendant Amazon was a joint employer of Plaintiffs. Defendant Amazon contracted out work through at least one layer of fissuring to hire workers to perform services for their retail customers. Defendant Amazon set a number of policies and procedures that they enforced through Defendant Nexen. Plaintiffs were controlled by Defendant Amazon and economically dependent on Defendant Amazon; therefore, Defendant Amazon was Plaintiffs' joint employer. *See e.g., Perez v. Lantern Light Corp.*, No. C12-01406, 2015 U.S. Dist. LEXIS 69933 *3 (W.D. Wash. May 29, 2015) (where company has contracted for workers who are directly employed by an intermediary, court applies joint employment analysis to relationship between company and workers) (Exhibit B); *Carrillo v. Schneider*

*Logistics Trans-Loading & Distrib., Inc.,* No. 11-cv-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility) (Exhibit F); *Berrocal v. Moody Petrol., Inc*., No. 07-22549, 2010 U.S. Dist. LEXIS 40867, 2010 WL 1372410 at *11 n.16 (S.D. Fla. Mar. 31, 2010) (joint employment may exist when "an employer hires laborers through a third party labor contractor") (Exhibit G).

96.    Plaintiffs were "employees" of Defendant Amazon, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Amazon "suffered or permitted" Plaintiffs to work for it.

97.    Defendant Amazon was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Amazon "suffered or permitted" Plaintiffs to work for it.

98.    Defendant Amazon is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

99.    Defendant Amazon is required to comply with the requirements of the FLSA.

100. Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the minimum wage provisions of the FLSA.

101. The minimum wage provision of the FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the minimum wage for all time worked.

102. Defendant Amazon has failed to pay Plaintiffs in compliance with the FLSA because they were not paid at least the minimum wage for all hours worked in accordance with 29 U.S.C. § 206.

103. In addition to compensatory damages for their unpaid wages, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Amazon for their willful failure to pay at least the minimum wage for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Amazon and in favor of Plaintiffs, declare that Defendant Amazon willfully violated the minimum wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT VI

### Defendant Amazon - Violation of the Overtime Provision of the FLSA

104.   Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

105.   Defendant Amazon was a joint employer of Plaintiffs. Defendant Amazon contracted out work through at least one layer of fissuring to hire workers to perform services for their retail customers. Defendant Amazon set a number of policies and procedures that they enforced through Defendant Nexen. Plaintiffs were controlled by Defendant Amazon, economically dependent on Defendant Amazon; therefore, Defendant Amazon was Plaintiffs' joint employer. *See e.g., Perez v. Lantern Light Corp.*, No. C12-01406, 2015 U.S. Dist. LEXIS 69933 *3 (W.D. Wash. May 29, 2015) (where a company has contracted for workers who are directly employed by an intermediary, court applies joint employment analysis to relationship between company and workers) (Exhibit B); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, No. 11-cv-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility) (Exhibit F); *Berrocal v. Moody Petrol., Inc.*, No. 07-22549, 2010 U.S. Dist. LEXIS 40867, 2010 WL

1372410 at *11 n.16 (S.D. Fla. Mar. 31, 2010) (joint employment may exist when "an employer hires laborers through a third party labor contractor") (Exhibit G).

106. Plaintiffs were "employees" of Defendant Amazon, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Amazon "suffered or permitted" Plaintiffs to work for it.

107. Defendant Amazon was Plaintiffs' "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Amazon "suffered or permitted" Plaintiffs to work for it.

108. Defendant Amazon is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of goods which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

109. Defendant Amazon is required to comply with the requirements of the FLSA.

110. The overtime wage provision of FLSA, 29 U.S.C. § 207, requires employers to pay an overtime premium of one and one-half times an employee's regular rate for every hour worked over 40 hours in a workweek.

111. Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the overtime wage provision of the FLSA.

112.   Defendant Amazon did not pay Plaintiffs one and one-half of their regular rate of pay for hours worked over 40 hours in a workweek.

113.   Defendant Amazon willfully failed to pay Plaintiffs the required overtime wage premium when Plaintiffs worked more than 40 hours in a workweek, in violation of the FLSA.

114.   In addition to compensatory damages for the required overtime wage premium, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Amazon for their willful failure to pay at least the overtime wage premium for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Amazon and in favor of Plaintiffs, declare that Defendant Amazon willfully violated the overtime wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court grant the following relief:

A.     The actions of Defendants complained of herein be adjudicated, decreed, and declared a violation of Defendants' obligations under the FLSA;

B.     Find that Defendants willfully violated the FLSA, and enter judgment in Plaintiffs' favor and accordingly against Defendants, jointly and severally;

C.     Certify the federal-law claims in this case as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and require that notice of their right to join this action by filing with this Court written consent to do so be given to all of Defendants' workers who are similarly situated to Plaintiffs;

D.     Declare the rights of the parties and provide commensurate injunctive relief;

E.     Award any compensatory damages due to Plaintiffs for any unpaid wages together with an equal amount in liquidated damages according to the applicable statutes of limitations;

F.     Award liquidated damages to Plaintiffs equal to the amount of unpaid back wages, pursuant to the FLSA;

G.     Award prejudgment interest with respect to the total amount of unpaid compensation to the extent permitted by applicable law;

H.     Establish a constructive trust, until further order of the Court, consisting of monies improperly withheld by Defendants due to its above-described improper conduct;

I.     Award reasonable attorneys' fees and costs to Plaintiffs' counsel as allowed by applicable law and statute; and

J.     Award such other and further relief as the Court deems just and appropriate.

## **JURY DEMAND**

NOW COME Plaintiff Hegedus, Plaintiff Welch, Plaintiff Ognian, Plaintiff Lowe and Plaintiff Hunger, by and through their attorneys, THE LAW OFFICES OF BRYAN YALDOU, PLLC, on behalf of themselves and others similarly situated, and hereby demand a trial by jury of the above entitled matter.


/s/ Bryan Yaldou
Bryan Yaldou (P70600)
Leah Seliger (P79284)
Omar Badr (P70966)
LAW OFFICES OF
BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
Phone: (734) 692-9200
Fax: (734) 692-9201
bryan@yaldoulaw.com
*Attorneys for Plaintiffs*


Dated: March 9, 2018